JOHN W. KULL AND OTHERS, RESPONDENTS, *v.* CHRISTIAN FRIEDRICH KULL AND OTHERS, APPELLANTS, IMPLEADED, ETC.

*Aliens — right to take lands by descent under treaties made with the United States — a treaty overrules all local statutes contravening it.*

A treaty between the United States and Wurtemburg provides that when, on the death of any person holding real property within the territories of one party, such real property would, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject shall be allowed a term of two years within which to sell the same, which term may be reasonably prolonged according to circumstances and to withdraw the proceeds thereof without molestation and exempt from all duties of detraction.

*Held,* that the treaty intended to confer on the alien heir, for the period of two years, precisely the same rights he would enjoy if he were a resident heir, imposing upon him simply the obligation to sell and convey the fee to some other party capable of holding it within that period or such other period as the State or country should see fit to confer upon him by prolonging the time, or to become, or declare his intention of becoming, a citizen of this country.

That meanwhile he might possess and take care of the property, improve it and exercise all the authority of ownership, for the purpose of making it more productive and valuable, and might himself enjoy such rents and profits as he could obtain therefrom.

That the treaty is, by virtue of the Constitution of the United States, a part of the supreme law of the land, and supersedes all local statutes that contravene its provisions.

APPEAL from so much of the interlocutory judgment of the Special Term as confirmed the report of the referee declaring the

rights, shares and interests of the parties to this action, which was brought to partition certain lands situated in this State.

*Charles Goepp*, for the appellants.

*G. H. Rudolph*, for the respondents.

DAVIS, P. J.:

William Kull, a resident of New York and a naturalized citizen, died intestate on the 9th of March, 1883. He left him surviving his widow Maria E. D. Kull, but no children or father or mother. He had four brothers, namely, John, Christian Friedrich, Heinrich and Johannes; and one sister. Of these, his sister and two brothers Christian F. and Johannes survived him. John died July 30, 1878, and Heinrich in 1874. John left five children, to wit, John W. Kull, the plaintiff, and William F. Kull, Frederick C. Kull, Henry G. Kull and Caroline M. Hansen, who are defendants and respondents in this action. Heinrich left two children, Bertha and Ernst, who with Christian Friedrich and Johannes Kull and Christina Catherine Seifried, are appellants. The respondents are citizens of New Jersey. The appellants are all aliens and subjects of the kingdom of Wurtemburg. These aliens have never taken the steps required by the statute of this State to entitle them to inherit thereunder. The treaty between the United States and Wurtemburg provides that when, on the death of any person holding real property within the territories of one party, such real property would, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject shall be allowed a term of two years to sell the same, which term may be reasonably prolonged according to circumstances, and to withdraw the proceeds thereof without molestation, and exempt from all duties of detraction. The contentions on the part of the appellants are,

*First.* That the several appellants take as heirs of the intestate under the law as modified by the statutes of this State, and as such heirs are entitled to hold the property in fee subject only to the rights of the State by the exercise of inquest of office found; which rights are now they claim disposed of by the default of the State (who is a party to this action) to assert any claim whatever.

*Second.* That by virtue of the treaty between the United States

and Wurtemburg the appellants take title to the lands, subject only to the obligation imposed by the treaty, to sell and convey the same within two years or within such prolonged time as might be accorded to them.

To sustain the first of these contentions, a very elaborate and able argument was presented by the learned counsel for the appellants. But we do not think it necessary to pass upon that question because, in our view, a correct construction of the treaty is equivalent in its effect to a determination of that contention in favor of the appellants. The treaty, by virtue of the Constitution of the United States, is a part of the supreme law of the land, and *pro hac vice,* it supersedes all local statutes that contravene its provisions. We think the manifest intention of the treaty is to put the alien persons described therein, in respect to the rights it secures to them, precisely upon the same footing as citizens of the State or subjects of the kingdom in which the question arises. The case is one beyond all doubt within the provisions of the treaty and affected by it, and the appellants are within the description of the persons mentioned in the treaty to whom the land would descend, were they not disqualified by alienage. An absolute power to sell property that would have descended to them, within the prescribed time, and to withdraw the proceeds thereof, is given by the treaty. This power is to sell the fee or whatever descendible interest or property there may be, and receive and enjoy as absolute owner the proceeds of the sale. The revisors of our statutes (3 R. S. [2d ed.], 589) say: " In reason and good sense there is no distinction between the absolute power of disposition and the absolute ownership, * * * it is an affront to common sense to say that a man has no property in that which he may sell when he chooses, and dispose of the proceeds at his pleasure." And they framed a law which was enacted by the legislature, providing that when the grantee of a power is authorized by the power to dispose of the entire fee of the land for his own benefit, he is entitled to an absolute fee. (1 R. S. [1st ed.], 732, §§ 81, 82, 83, 84.) In principle it is difficult to see why any distinction should be made between the effect of such a power given by law or by will or deed. The "affront to common sense " is equally apparent in either case if the possessor of the power may sell when he chooses and dispose of the proceeds as he pleases.

It is urged by the respondent that the fee vests in the resident heirs until the exercise of the power of sale. But what becomes of the fee in case there be no resident heirs, but all the heirs of the decedent are non-resident aliens within the description of the treaty? The fee is not in the State for it takes no title until office found. It is not *in nubibus*, for the law vests it somewhere pending the act of sale. It must be held, we think, that the fee vests in the non-resident alien, the land being descendible, as prescribed by the treaty. We think there is no reason to doubt but that under the provisions of the treaty the alien heir may come to the State and at once enter into the possession, use and enjoyment of the property, and exercise all the rights of ownership and advantages of possession for the purpose of making the sale, because those rights are manifestly intended by the treaty to be conferred upon him. In short, in our judgment the treaty intends to confer on the alien heir, for the period of two years, precisely the same rights he would enjoy if he were a resident heir, imposing upon him simply the obligation to sell and convey the fee to some other party capable of holding within that period, or such other period as the State or country shall see fit to confer upon him by prolonging the time, or by his becoming, or declaring his intention to become a citizen. Meanwhile, he may possess and take care of the property, improve it and exercise all the authority of owner, for the purpose of making it more productive and valuable, and may himself enjoy such rents and profits as he can obtain. The spirit of the treaty cannot be fully carried out without this construction, for the right to sell may, and often would be greatly embarrassed by a hostile possession of the property by resident heirs, or by its misuse on their part to the prejudice of the alien heirs. All the rights of the State are suspended by the treaty for the full period of two years, and all the rights of other heirs over the property are also suspended by the operation of the treaty. The effect of this construction is necessarily to vest the alien heirs with title to their respective proportions of the rents and income of the property, in whosesoever hands it may come. The questions involved in this case are extremely interesting and ought to be determined by the court of last resort.

We are furnished with a manuscript opinion in the case of *Bollerman* v. *Blake,* in the Court of Appeals, not reported in full. (94

N. Y., 624.) But in that case a majority of the judges concurred only in the conclusion of the opinion. It cannot, therefore, be said to be authoritative upon all the points discussed in the opinion. Andrews, J., concurred in that case on the ground that the alien heirs took a fee determinable by non-exercise of the power of sale within two years. This rests upon what we think to be the true construction of the treaty, and much of the opinion pronounced by Earl, J., is quite consistent with this view, although portions of it seem to be in conflict with it. We are at liberty, however, notwithstanding that case, to construe the treaty in accordance with our own views. The result is that the judgment must be reversed, so far as appealed from, and the case remanded to the Special Term and referee to proceed and determine the rights of the appellants in the property and the rents and profits thereof in conformity to this opinion.

Since writing this opinion our attention is called to the case of *Maynard* v. *Maynard* (36 Hun, 227). That case, if applicable to the questions involved in this, would require the same disposition as the judgment in this case.

Brady and Daniels, JJ., concurred.

Judgment reversed and case remanded to Special Term as directed in opinion.